[No. 58321-2-I.   Division One.   February 4, 2008.]

JOYCE SCHWEICKERT, *Respondent*, v. VENWEST YACHTS, INC., *Appellant*.

888

*Daniel P. Harris* and *Charles P. Moure* (of *Harris & Moure, PLLC*), for appellant.

*Christopher W. Moore*; and *Thomas J. Keane* (of *Keane Law Offices*), for respondent.

¶1 SCHINDLER, A.C.J. — While visiting a boat show, Joyce Schweickert issued a $150,000 check to Venwest Yachts,

Inc., for a custom-built yacht. Schweickert later decided not to purchase the yacht and demanded that Venwest return the $150,000. RCW 88.02.220 states that vessel dealers must place funds they receive in excess of $1,000 in a separate trust account. We reject Venwest's argument that RCW 88.02.220 does not apply because Schweickert's check was for a production slot for a custom-built yacht. RCW 88.02.220 required Venwest to place Schweickert's check in a separate trust account without regard to whether the money was for a production slot to construct a yacht or an already manufactured yacht. Because Venwest violated RCW 88.02.220, we affirm the court's decision to grant Schweickert's motion for summary judgment and entry of the judgment against Venwest for $150,000 plus interest. We also conclude that the trial court did not abuse its discretion in excluding the testimony of Venwest's expert, and we affirm the court's decision to deny Schweickert's request for attorney fees.

## FACTS

¶2 In the beginning of February 2004, Schweickert met with a salesman for Venwest, Randy Hacker, at a boat show in Florida. On February 12, Schweickert told Hacker she was interested in purchasing a new 70-foot Marlow Explorer yacht similar to a used yacht Hacker had showed her. Hacker told Schweickert that she should make a deposit in order to secure the base price and the options for the new yacht. Later that day, Schweickert issued a check to Venwest for $150,000 and wrote "70E Deposit" on the check to indicate the check was for the 70-foot Marlow Explorer. Schweickert then asked her employee to deliver the check to Hacker. Schweickert testified that she believed "[t]he $150,000 check was to be applied toward the total purchase price of the yacht, only if and when [Venwest] and I entered into a signed written contract for purchase of the yacht." Hacker testified that he told Schweickert the deposit was nonrefundable.

¶3 When Hacker met with Schweickert in Seattle on February 19, Hacker gave Schweickert Venwest's "Yacht Purchase Contract" for the 70-foot Marlow Explorer. The Yacht Purchase Contract identifies Venwest as the "Dealer" and states that Venwest is the exclusive west coast dealer for Marlow Explorer yachts. Schweickert is identified as the "Purchaser." In the contract, the purchaser "agrees to purchase from Dealer one 70' Marlow Explorer motor yacht, slot # ___, together with all of its machinery, equipment, gear, and . . . all applicable warranties . . . ." The contract states that total purchase price of the yacht was $2,271,155, which includes a nonrefundable payment of $150,000 and a series of progress payments tied to different "construction milestones." There is no dispute that under the contract, the $150,000 deposit applies to the purchase price of the yacht. The contract provides that upon execution, the "Dealer will cause Builder to commence construction" of the yacht with a planned delivery date on or before August 31, 2005. Schweickert did not sign the contract. Instead, she asked Hacker to forward the contract to her attorney to review.

¶4 That same day, a bank employee called Schweickert to verify that she had written a $150,000 check to Venwest and wanted to fund it. Schweickert confirmed that she did.[1] Venwest deposited the check in its general account. Venwest used $100,000 to refund a deposit and the remaining $50,000 for business operations.

¶5 On February 23, Schweickert's attorney notified Venwest that Schweickert had decided not to sign the contract to purchase the yacht and demanded Venwest return the $150,000. Venwest refused, taking the position that the deposit was nonrefundable.

¶6 On March 16, Schweickert filed a complaint against Venwest for conversion, fraud, and violation of the Consumer Protection Act (CPA), chapter 19.86 RCW. Schweickert filed a motion for partial summary judgment on her conver-

---

[1] Schweickert told the agent, "Yes. I'm buying a boat."

sion claim, arguing that the oral agreement to purchase a yacht violated the statute of frauds and was illusory. Venwest filed a cross motion for summary judgment, asking the court to dismiss the lawsuit. The trial court granted Venwest's motion for summary judgment and dismissed all of Schweickert's claims except the CPA claim based on the statutory requirement under RCW 88.02.220 to place the $150,000 in a separate trust account.

¶7 Thereafter, the trial court granted Schweickert's motion to amend her complaint to allege breach of fiduciary duty and unjust enrichment based on Venwest's violation of RCW 88.02.220. Schweickert then filed another motion for partial summary judgment, arguing that as a matter of law, Venwest breached its fiduciary duty by failing to comply with the requirements of RCW 88.02.220. Venwest filed a cross motion for summary judgment, asserting there were no material issues of fact that there was an oral agreement between the parties, and that the $150,000 deposit was nonrefundable.

¶8 The trial court granted Schweickert's motion for partial summary judgment for breach of fiduciary duty and conversion. The court ruled that regardless of whether the $150,000 was nonrefundable, Venwest was liable as a matter of law for violating RCW 88.02.220. The court imposed a constructive trust and ordered Venwest to return the $150,000 with interest to Schweickert. The trial court later dismissed Schweickert's CPA claim and denied her request for an award of attorney fees on equitable grounds.

## ANALYSIS

*Breach of Duty as a Vessel Dealer*

¶9 The question in this case is whether the requirements of RCW 88.02.220 apply to a deposit to a vessel dealer for a production slot to build a yacht. Venwest does not dispute it received $150,000 from Schweickert and did not deposit any of the money into a separate trust account. But Venwest asserts the trial court erred in ruling it was liable under

RCW 88.02.220 because the statute does not apply to Schweickert's check to purchase a production slot to build a yacht.

¶10 We review summary judgment de novo and engage in the same inquiry as the trial court. *Heath v. Uraga*, 106 Wn. App. 506, 512, 24 P.3d 413 (2001). Summary judgment is proper if the pleadings, depositions, answers, and admissions, together with the affidavits, show that the moving party is entitled to judgment as a matter of law. CR 56(c). Summary judgment is appropriate if, in view of all the evidence, reasonable persons could reach only one conclusion. *Hansen v. Friend*, 118 Wn.2d 476, 485, 824 P.2d 483 (1992). Statutory interpretation is a question of law we review de novo. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002).

¶11 RCW 88.02.220 provides:

> A vessel dealer who receives cash or a negotiable instrument of deposit in excess of one thousand dollars, or a deposit of any amount that will be held for more than fourteen calendar days, shall place the funds in a separate trust account.
>
> (1) The cash or negotiable instrument must be set aside immediately upon receipt for the trust account, or endorsed to such a trust account immediately upon receipt.
>
> (2) The cash or negotiable instrument must be deposited in the trust account by the close of banking hours on the day following the receipt.
>
> (3) After delivery of the purchaser's vessel the vessel dealer shall remove the deposited funds from the trust account.
>
> (4) The dealer shall not commingle the purchaser's funds with any other funds at any time.
>
> (5) The funds shall remain in the trust account until the delivery of the purchased vessel. However, upon written agreement from the purchaser, the vessel dealer may remove and release trust funds before delivery.

¶12 This court's primary goal in interpreting statutes is "to ascertain and give effect to legislative intent." *State v. Pac. Health Ctr., Inc.*, 135 Wn. App. 149, 158-59, 143

P.3d 618 (2006). We look to the legislative enactment as a whole to determine the meaning. *Pac. Health Ctr.*, 135 Wn. App. at 159. If the statute's meaning is plain on its face, we give effect to that plain meaning. *Campbell & Gwinn*, 146 Wn.2d at 9-10. A statute is ambiguous if it has two or more reasonable interpretations, but not " 'merely because different interpretations are conceivable.' " *Cerrillo v. Esparza*, 158 Wn.2d 194, 201, 142 P.3d 155 (2006) (internal quotation marks omitted) (quoting *Agrilink Foods, Inc. v. Dep't of Revenue*, 153 Wn.2d 392, 396, 103 P.3d 1226 (2005)). If a statute is ambiguous, we may resort to legislative history. *Campbell & Gwinn*, 146 Wn.2d at 12. We avoid " 'readings of statutes that result in unlikely, absurd, or strained consequences.' " *Advanced Silicon Materials, LLC v. Grant County*, 156 Wn.2d 84, 90, 124 P.3d 294 (2005) (quoting *Glaubach v. Regence BlueShield*, 149 Wn.2d 827, 833, 74 P.3d 115 (2003)). "Ultimately, in resolving a question of statutory construction, this court will adopt the interpretation which best advances the legislative purpose." *Bennett v. Hardy*, 113 Wn.2d 912, 928, 784 P.2d 1258 (1990).

¶13 The plain language of RCW 88.02.220 does not support Venwest's argument. Under RCW 88.02.220, a vessel dealer who receives a check for more than $1,000 must deposit the money in a separate trust account. There is no dispute that Venwest is a vessel dealer. RCW 88.02.010(3) defines a "dealer" as "a person, partnership, association, or corporation engaged in the business of selling vessels at wholesale or retail in this state." Venwest is a corporation engaged in selling yachts. Venwest's Yacht Purchase Contract specifically refers to Venwest as a dealer and states that it is "the exclusive West Coast dealer for Marlow Explorer Yachts, Ltd."

¶14 RCW 88.02.220 expressly states that a vessel dealer who receives a deposit in excess of $1,000 "shall place the funds in a separate trust account." The word "shall" imposes a mandatory duty unless a contrary legislative intent is apparent. *Erection Co. v. Dep't of Labor & Indus.*, 121 Wn.2d 513, 518, 852 P.2d 288 (1993). Because no contrary

legislative intent is apparent, we conclude that the express language of RCW 88.02.220 imposes a mandatory duty for vessel dealers to place deposits over $1,000 in a separate trust account. And because the legislature does not limit the application of the mandatory requirement in RCW 88.02.220, the statute applies without regard to whether the money is for a production slot to construct a yacht or an already manufactured yacht.

¶15 Venwest argues that the scope of RCW 88.02.220 is ambiguous because Venwest, like other vessel dealers, also sells moorage and the language of the statute would apply to all sales, including moorage. We do not agree. According to RCW 88.02.220(5), the statute applies only to funds related to construction and purchase of vessels, not to other sales, such as moorage. RCW 88.02.220(5) expressly states that the "funds shall remain in the trust account until the delivery of the *purchased vessel*."[2]

¶16 The legislative history of RCW 88.02.220 supports the conclusion that the legislature intended the provision to apply to a deposit a vessel dealer receives to build a vessel without regard to whether the money is for a production slot or an already built yacht. The previous version of the statute included a specific provision "for purposes of manufacturing a vessel that does not exist." Former RCW 88-.02.220(5) (1987) provided:

> The funds shall remain in the trust account until the delivery of the purchased vessel. However, *for the purpose of manufacturing a vessel that does not already exist,* and upon written agreement from the purchaser, the vessel dealer may remove and release trust funds before delivery.

(Emphasis added.) In 1991, the legislature deleted the language "for the purpose of manufacturing a vessel that does not already exist." LAWS OF 1991, ch. 339, § 33. As amended, RCW 88.02.220(5) provides:

> The funds shall remain in the trust account until the delivery of the purchased vessel. However, upon written agreement

---

[2] (Emphasis added.)

from the purchaser, the vessel dealer may remove and release trust funds before delivery.

¶17 Before the amendment, a vessel dealer could remove and release funds deposited in a separate trust account only if the money was for manufacturing a vessel. The amended version of RCW 88.02.220(5) is not so limited. It allows a vessel dealer with written permission from the purchaser to remove funds deposited in a separate trust account before delivery.

¶18 Venwest also relies on RCW 88.02.120 to argue that the sole purpose of the statute is "to create a system of certificates for – obviously – existing vessels," and not to create a duty under RCW 88.02.220 to deposit funds in excess of $1,000 in a separate trust account.[3] RCW 88.02.120 provides in pertinent part:

> It is the intention of the legislature to establish a system of certificates of title for vessels and watercraft similar to that in existence for motor vehicles. It is the goal of this legislation that the title certificate become prima facie evidence of ownership of the vessel it describes so that persons may rely upon that certificate; and that security interest in vessels be perfected solely by notation of a secured party upon the title certificate.

We must interpret statutes to give effect to every section, with no portion rendered meaningless or superfluous. *City of Seattle v. State*, 136 Wn.2d 693, 698, 965 P.2d 619 (1998). While the legislature in RCW 88.02.120 establishes a system of certificates of title for vessels and watercraft, RCW 88.02.220 protects vessel purchasers by requiring vessel dealers to place money it receives in excess of $1,000 in a separate trust account. In order to give effect to every section and not render RCW 88.02.220 superfluous, we interpret chapter 88.02 RCW as having the purpose of both creating a system of certificates and protecting buyers by requiring vessel dealers to place deposits in separate trust accounts.

---

[3] Appellant's Answer and Reply Br. at 14.

¶19 Venwest also makes the policy argument that applying RCW 88.02.220 to yachts that do not already exist would require the dealer to finance the construction of a vessel. But as previously noted, the statute explicitly allows the dealer to remove or release funds deposited in the trust account to finance construction, with the written agreement of the purchaser.

¶20 In the alternative, Venwest contends that even if the requirements of RCW 88.02.220 apply, Schweickert does not have a private cause of action under the statute. Where there is no statutory cause of action, we will imply one if "(1) the plaintiff is within the class for whose benefit the statute was enacted; (2) legislative intent, explicitly or implicitly, supports such a remedy; and (3) implying a remedy is consistent with the underlying legislative purpose." *Crisman v. Pierce County Fire Prot. Dist. No. 21*, 115 Wn. App. 16, 22, 60 P.3d 652 (2002). In paying $150,000 to Venwest, Schweickert is within the class of individuals the legislature intended to benefit by enacting RCW 88.02.220. The intent of RCW 88.02.220 is to protect purchasers of vessels by requiring vessel dealers to deposit the money in a separate trust account. And allowing Schweickert to sue Venwest for breach of the duty to deposit the money in a separate trust account is consistent with the purpose of RCW 88.02.220.

¶21 The cases Venwest relies on to argue that Schweickert does not have a private cause of action are distinguishable. In *Claire-Ann Co. v. Christenson & Christenson, Inc.*, 223 Mich. App. 25, 566 N.W.2d 4 (1997), the purchaser sued the broker individually. The question in *Claire-Ann* was whether the broker timely deposited the check. There was no dispute about whether the broker had a duty to deposit the purchaser's check. The escrow statute in *Claire-Ann* expressly provided for a limited private right of action that did not include the late deposit of the check. 223 Mich. App. at 31. Consequently, the Michigan Court of Appeals held that even if a broker violated the escrow statute by making an untimely deposit of a check, there was no private right of

action against the broker. *Claire-Ann*, 223 Mich. App. at 30-31. And in *Weden v. San Juan County*, 135 Wn.2d 678, 958 P.2d 273 (1998), the Washington Supreme Court did not address the statutory requirements of RCW 88.02.220, holding that registering personal watercraft under chapter 88.02 RCW did not give owners the right to operate them anywhere in the state.[4]

¶22 In sum, RCW 88.02.220 required Venwest to deposit Schweickert's check for $150,000 in a separate trust account. Because Venwest failed to do so, the trial court did not err in ruling as a matter of law that Venwest violated RCW 88.02.220, imposing a constructive trust, and ordering Venwest to refund Schweickert's money with interest.[5] We affirm.

¶23 The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with the rules governing unpublished opinions.

AGID and BECKER, JJ., concur.

---

[4] Venwest also cites *Weden* for the argument that the legislature enacted the statute only to "raise tax revenues and to create a title system for boats." 135 Wn.2d at 694. But the court made this statement while pointing out what the legislature did not intend: "to grant PWC [(personal watercraft)] owners the right to operate their PWC anywhere in the state." *Weden*, 135 Wn.2d at 694.

[5] A "constructive trust" is an equitable remedy that compels restoration where a party gains something for himself which, " 'in equity and good conscience, he should not be permitted to hold.' " *Consulting Overseas Mgmt., Ltd. v. Shtikel*, 105 Wn. App. 80, 86-87, 18 P.3d 1144 (2001) (internal quotation marks omitted) (quoting *Scymanski v. Dufault*, 80 Wn.2d 77, 88, 491 P.2d 1050 (1971)). In deciding to impose a constructive trust, the question is whether the enrichment was unjust, not whether the holder of the property acted with bad motive or malicious intent. *Brooke v. Robinson*, 125 Wn. App. 253, 257, 104 P.3d 674 (2004).