221 P.3d 913 (2009)
Jeffrey MOORE, Respondent,
v.
BLUE FROG MOBILE, INC., a Washington corporation; Defendant,
Victor Siegel and Jane Doe Siegel, a married couple; Appellants
Brett Maxwell and Jane Doe Maxwell, a married couple; and Maha Ibrahim and John Doe Ibrahim, Defendants.
No. 62716-3-I.
Court of Appeals of Washington, Division 1.
August 10, 2009.
Publication Ordered October 13, 2009.
*914 Kelby Dahmer Fletcher, Peterson Young Putra, Seattle, WA, for Appellant.
Gregory Mann Miller, John Robert McDowall, Carney Badley Spellman PS, Seattle, WA, for Respondent.
Timothy J. O'Connell, Stoel Rives LLP, Seattle, WA, for The Employment Law Committee of the Association of Washington Business.
LAU, J.
¶ 1 This case arises from a wages dispute between two former executives of the Blue Frog Mobile corporation. Blue Frog terminated Jeffrey Moore, but agreed to pay him according to the terms of a severance agreement. Victor Siegel later decided Moore breached the severance agreement by submitting a declaration in a third party's litigation against Blue Frog. He directed Blue Frog to stop paying Moore, who then sued the company and Siegel personally under RCW 49.52.070.
¶ 2 This statute provides for double damages when an employer (or officer) willfully withholds an employee's wages. But if there is a bona fide dispute over the employee's entitlement to the wages, the refusal to pay is not willful. Because there is a genuine issue of material fact on whether a bona fide dispute existed, we reverse the trial court's order granting summary judgment to Moore.

FACTS
¶ 3 Blue Frog Mobile was founded in 2004 as a small, privately held corporation focused on mobile media and entertainment services. Moore was one of its founders and served as its chief operating officer (COO) from September 12, 2005, to January 9, 2007, when the board of directors terminated him. After Moore left, Victor Siegel became the chief executive officer (CEO) of Blue Frog. He served as CEO "from about mid-March, 2007 until about early January, 2008."
¶ 4 Under his employment contract with Blue Frog, Moore was entitled to certain payments as a result of his January 2007 termination. But a dispute arose over those payments, and on April 17, 2007, Blue Frog and Moore resolved the dispute by entering into a new agreement. Under the terms of that agreement, Blue Frog agreed to accelerate Moore's stock options, provide continued health insurance and $10,000 toward legal fees, and make severance payments to Moore totaling $167,708.33. In exchange, Moore agreed to waive various claims against his former employer. The contract also provided:

Nondisparagement. Executive agrees ... not to take, support, encourage, induce or voluntarily participate in any action or attempted action that would negatively comment on, disparage, or call into question the business operations, policies, or conduct of [Blue Frog], or any parent, subsidiaries, affiliates, officers or employees thereof ... or to act in any way with respect to such business operations, policies or conduct that would damage [Blue Frog]'s reputation, business relationships, or present or future business, or the reputation of any past or present directors, executives, officers, agents, employees or parents, affiliates and subsidiaries of [Blue Frog].
¶ 5 On August 8, 2007, Moore signed a declaration about a contract he had negotiated with International Telecom, Ltd. (ITL) approximately two years earlier when he was still COO of Blue Frog. ITL was litigating a claim against Blue Frog based on the contract. On August 31, 2007, after learning about the declaration, Siegel decided to terminate *915 further severance payments to Moore. Before terminating the payments, he consulted Blue Frog's general counsel and outside counsel. Siegel later testified, "I believe that Mr. Moore violated the non-disparagement provision of his Separation Agreement with Blue Frog when he volunteered to advance the interests of ITL to the detriment of Blue Frog."
¶ 6 In September 2007, Moore filed suit against Blue Frog, two members of its board of directors, and Siegel. He sought double damages and attorney's fees under RCW 49.52.070, which provides this as a remedy for an employer's willful refusal to pay an employee's wages. All four defendants jointly answered, denying that any wages were owed to Moore. Blue Frog also asserted a counterclaim for damages based on its contention that Moore "breached his contractual duty ... not to support any action that would disparage and harm Blue Frog...."
¶ 7 Siegel opposed Moore's summary judgment motion, arguing that there was a bona fide dispute regarding Moore's entitlement to wages because Siegel reasonably believed that Moore's declaration materially breached the nondisparagement provision in the severance agreement. Siegel claimed he was suspicious of ITL's claim and Moore's motives for submitting the declaration. He noted that Moore negotiated the Blue Frog/ITL contract in 2005 with Yvette Melendez, part owner of ITL and a sister of Ian Eisenberg. Eisenberg was another founder of Blue Frog, and in August 2007, he was involved in a separate lawsuit with Blue Frog. Moore had worked for Eisenberg previously as independent legal counsel. Siegel also claimed he was concerned the ITL claim was illegitimate. However, after Moore's declaration, Blue Frog agreed to settle its dispute with ITL for a cash payment of $300,000. Siegel stated, "ITL gained value for purposes of its claim from the declaration Mr. Moore produced."
¶ 8 Moore responded that summary judgment was proper because Siegel had no reasonable basis to think his declaration breached the severance agreement. Moore claimed that the declaration he submitted was not significant in the litigation between Blue Frog and ITL because it merely confirmed the existence of a contractual relationship, of which Blue Frog executives were aware. Moore also presented evidence that Blue Frog had been negotiating a settlement with ITL since March 2007, long before he submitted the declaration. The initial settlement proposal was for Blue Frog to pay ITL $100,000 cash and provide ITL $250,000 in new business. But by July 30, 2007, still 10 days before Moore's declaration. Siegel was offering a $300,000 cash settlement. This was the same amount the parties ultimately settled on after Moore submitted his declaration. Moore argued that because there was nothing damaging or disparaging about his declaration, Siegel was using it as a pretext to justify termination of his severance payments.
¶ 9 The trial court heard arguments on Moore's summary judgment motion on November 14, 2008. By that point, Moore had settled with the two Blue Frog board members and Blue Frog had stipulated to a judgment in favor of Moore and dismissal of its counterclaim with prejudice. On November 24, 2008, the trial court awarded summary judgment to Moore in the amount of $125,946.86, twice the unpaid severance amount. Moore requested $53,039.16 in attorney fees and $2,560.16 in costs. The trial court awarded the full cost amount, and $48,483.66 in fees, but it did not enter findings of fact and conclusions of law to support the award. Siegel appeals.

ANALYSIS
¶ 10 This court reviews an order of summary judgment de novo, engaging in the same inquiry as the trial court. Harberd v. City of Kettle Falls, 120 Wash.App. 498, 507, 84 P.3d 1241 (2004). Summary judgment is appropriate when there is "no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law ...." CR 56(c). The court must construe facts and all reasonable inferences from those facts in the light most favorable to the nonmoving party. Lipscomb v. Farmers Ins. Co. of Wash., 142 Wash.App. 20, 27, 174 P.3d 1182 (2007). However, mere allegations and argumentative assertions will not defeat summary judgment. Vacova Co. v. Farrell, 62 *916 Wash.App. 386, 395, 814 P.2d 255 (1991). Summary judgment is appropriate if reasonable persons could reach but one conclusion. Venwest Yachts, Inc. v. Schweickert, 142 Wash.App. 886, 893, 176 P.3d 577 (2008).
¶ 11 RCW 49.52.050 and .070 authorize certain criminal and civil penalties when an employer (or officer, vice principal, or agent of an employer) willfully deprives an employee of wages to which the employee is entitled.
Any employer or officer, vice principal or agent of any employer, whether said employer be in private business or an elected public official, who
...;
(2) Willfully and with intent to deprive the employee of any part of his wages, shall pay any employee a lower wage than the wage such employer is obligated to pay such employee by any statute, ordinance, or contract;
...
Shall be guilty of a misdemeanor.
RCW 49.52.050(2).
Any employer and any officer, vice principal or agent of any employer who shall violate any of the provisions of subdivisions (1) and (2) of RCW 49.52.050 shall be liable in a civil action by the aggrieved employee or his assignee to judgment for twice the amount of the wages unlawfully rebated or withheld by way of exemplary damages, together with costs of suit and a reasonable sum for attorney's fees....
RCW 49.52.070. These statutes reflect a strong policy in favor of ensuring that employees receive the full amount of wages to which they are entitled. Morgan v. Kingen, 141 Wash.App. 143, 152, 169 P.3d 487 (2007), aff'd, 166 Wash.2d 526, 210 P.3d 995 (2009).
¶ 12 "The critical determination in a case under RCW 49.52.070 for double damages is whether the employer's failure to pay wages was `willful.'" Schilling v. Radio Holdings, Inc., 136 Wash.2d 152, 159, 961 P.2d 371 (1998). A failure to pay is willful when it is the result of knowing and intentional action rather than mere carelessness. Ebling v. Gove's Cove, Inc., 34 Wash.App. 495, 500, 663 P.2d 132 (1983). "[W]illfulness is found where `the employer's refusal to pay [is] volitional.... Willful `means merely that the person knows what he is doing, intends to do what he is doing, and is a free agent.'" Morgan, 210 P.3d at 998 (quoting Schilling v. Radio Holdings, Inc., 136 Wash.2d 152, 159-60, 961 P.2d 371(1998)). But a "bona fide" dispute between the employer and employee regarding the wages can negate a finding of willfulness. Morgan, 210 P.3d at 998. "An employer does not willfully withhold wages within the meaning of RCW 49.52.070 where he has a bona fide belief that he is not obligated to pay them." McAnulty v. Snohomish Sch. Dist. 201, 9 Wash.App. 834, 838, 515 P.2d 523 (1973). A bona fide dispute is one that is "fairly debatable." Schilling, 136 Wash.2d at 161, 961 P.2d 371. Generally, the issue of whether an employer willfully withheld wages is a question of fact. But where reasonable minds could not differ, the court may decide the question as a matter of law. Dice v. City of Montesano, 131 Wash.App. 675, 687-88, 128 P.3d 1253 (2006).
¶ 13 Here, Moore argues that summary judgment was proper because reasonable minds could only conclude that Blue Frog, at Siegel's direction, willfully deprived him of his wages. He contends the undisputed facts establish that his declaration did not damage Blue Frog, and he emphasizes that the company ultimately agreed to dismiss its counterclaim. But the critical issue here is not whether Blue Frog was damaged financially because of Moore's declaration. Instead, it is whether Siegel's asserted belief that Moore breached the severance agreement and was no longer entitled to severance paymentswas reasonable enough to create a bona fide dispute. It does not matter if Siegel's interpretation of the nondisparagement clause is erroneous. The question is whether Moore's entitlement to the payments was "fairly debatable." Schilling, 136 Wash.2d at 161, 961 P.2d 371.
¶ 14 Siegel presented sufficient evidence on this point to defeat summary judgment. He points to the broadly worded nondisparagement clause that prohibited Moore from voluntarily participating in any action that would negatively comment on, disparage, or call into question Blue Frog's business operations, policies, or conduct, and from acting in any way that would damage Blue Frog's reputation, business relationships, or future business. Although he was not compelled to *917 testify regarding the Blue Frog/ITL contract, Moore voluntarily submitted a declaration to ITL's attorney. The declaration, while essentially factual, supported ITL's position in the litigation. And Siegel was suspicious of Moore's motives for submitting the declaration because of his relationships with people who were litigating claims against Blue Frog like Ian Eisenberg and Yvette Melendez. The Blue Frog/ITL settlement was more favorable towards ITL than predeclaration offers because it included a lump sum payment.[1] Siegel consulted with Blue Frog's general counsel and outside counsel before terminating the payments.
¶ 15 Viewing these facts in the light most favorable to Siegel, a reasonable jury could find that Siegel genuinely and reasonably believed that Moore materially breached the severance agreement, thereby relieving Blue Frog of its severance payment obligation.[2] While this belief may have been erroneous, reasonable minds could find that it created a bona fide dispute over Moore's entitlement to the payments and thereby, defeat a willfulness finding and preclude Siegel's personal liability for double damages under RCW 49.52.070. Because there is a genuine issue of material fact as to whether a bona fide dispute existed, we reverse the trial court's summary judgment order and its award of attorney fees and costs.[3]
¶ 16 Reversed.
WE CONCUR: DWYER, A.C.J., and BECKER, J.
NOTES
[1] Moore emphasizes the Blue Frog/ITL settlement was for $300,000, the same amount that Siegel offered prior to the declaration. But Siegel correctly observes that the predeclaration offer consisted of a $150,000 initial payment followed by $150,000 paid in six subsequent installments whereas the ultimate settlement was for a single $300,000 cash payment. This was a significant improvement for ITL, especially considering that Blue Frog filed for chapter 7 bankruptcy a few months later.
[2] A material breach is one serious enough to justify the other party's abandoning the contract because the contract's purpose is defeated. Park Ave. Condo. Owners Ass'n v. Buchan Devs., L.L.C., 117 Wash.App. 369, 383, 71 P.3d 692 (2003). Whether a breach is material depends on the circumstances of each particular case. State v. Kessler, 75 Wash.App. 634, 641, 879 P.2d 333 (1994).
[3] Since this conclusion is dispositive, we do not reach the parties' other contentions. However, because issues related to attorney fees may arise after remand, we reiterate that "findings and conclusions are generally required to support an award of fees." Morgan, 141 Wash.App. at 164, 169 P.3d 487.