

2015 OCT 12 AM 9:34

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| NIELS HVIDTFELDT, | ) | No. 72846-6-I |
|  | ) |  |
| Appellant, | ) | DIVISION ONE |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| SITRION SYSTEMS AMERICAS, INC., | ) | UNPUBLISHED |
|  | ) |  |
| Respondent. | ) | FILED: <u>October 12, 2015</u> |
|  | ) |  |

Cox, J. — Niels Hvidtfeldt appeals the trial court's order granting Sitrion Systems Americas Inc.'s motion for summary judgment. There are no genuine issues of material fact whether he is entitled to post termination bonuses under the terms of his employment agreement. Likewise, there are no genuine issues of material fact whether Sitrion willfully withheld any bonuses in violation of RCW 49.52.050 because the parties had a bona fide dispute over this issue. Sitrion is entitled to judgment as a matter of law. We affirm.

This case is an employment agreement dispute between Hvidtfeldt and Sitrion over post termination compensation. Specifically, this case involves the success bonus portion of his compensation. At oral argument of this case, Hvidtfeldt claimed this includes both a fourth-quarter segment bonus and an annual segment bonus for the year 2012.

The material facts are largely undisputed. Hvidtfeldt owns eRhapsody. In March 2011, eRhapsody and Sitrion GmbH, Sitrion's parent corporation, entered into a written cooperation agreement. Under this agreement, Hvidtfeldt was to receive post termination commission payments. Sitrion GmbH eventually terminated this agreement in 2011.

In November 2011, Sitrion negotiated with Hvidtfeldt to hire him as its general manager. Hvidtfeldt sent an e-mail to the president and chief executive officer of Sitrion GmbH. In the e-mail, Hvidtfeldt stated that he was interesting in working for Sitrion even if it meant "forfeiting substantial future and earned commissions."[1]

Hvidtfeldt also proposed including a tail clause in the employment agreement, which provided for post termination bonuses. Sitrion GmbH rejected Hvidtfeldt's proposal, stating:

> We believe the attached documents represent the final agreements . . . . *[T]here is no post agreement tail and we have no intention to add one. As long [sic] you are with the company you will receive compensation, if you leave this ends.* This is consistent with all similar agreements currently in place in the company.[2]

Thereafter, the parties both signed the employment agreement without any further modification. Later in this decision, we state the material terms of the parties' final agreement.

---

[1] Clerk's Papers at 37.

[2] Id. at 41 (emphasis added).

2

Hvidtfeldt and Sitrion GmbH also executed an incentive agreement. This agreement provides that the terms expire 12 months after termination of the employment agreement, if Sitrion terminates the employment agreement without cause.

In September 2012, Sitrion's president terminated Hvidtfeldt's employment as an at will employee.

Hvidtfeldt sued Sitrion for breach of contract based on its refusal to pay him any success bonuses for the period after his termination. He also claimed that Sitrion violated the wage claim statute, RCW 49.52.050. He sought damages and attorney fees for the alleged violation under RCW 49.52.070.

Sitrion moved for summary judgment. The trial court granted the motion. Hvidtfeldt appeals.

## BREACH OF CONTRACT

Hvidtfeldt argues that the trial court erred by granting summary judgment on his claim for breach of the employment agreement. We disagree.

"Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."[3] "A genuine issue of material fact exists if 'reasonable minds could differ on the facts controlling the outcome of the litigation.'"[4] This court considers "all facts

---

[3] Scrivener v. Clark Coll., 181 Wn.2d 439, 444, 334 P.3d 541 (2014); See also CR 56(c).

[4] Knight v. Dep't of Labor & Indus., 181 Wn. App. 788, 795, 321 P.3d 1275 (quoting Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008)), review denied, 339 P.3d 635 (2014).

3

and make[s] all reasonable, factual inferences in the light most favorable to the nonmoving party."[5] "A material fact precluding summary judgment is a fact that affects the outcome" of a dispute.[6]

This court reviews de novo a trial court's grant of summary judgment.[7]

"Washington continues to follow the objective manifestation theory of contracts."[8] When interpreting an agreement, this court attempts "to determine the parties' intent by focusing on the objective manifestations of the agreement, rather than on the unexpressed subjective intent of the parties. We impute an intention corresponding to the reasonable meaning of the words used."[9] The parties' subjective intent is "generally irrelevant if the intent can be determined from the actual words used" in the agreement.[10] These words are given "their ordinary, usual, and popular meaning unless the entirety of the agreement clearly demonstrates a contrary intent."[11] We interpret only what was written in the agreement, not "what was intended to be written."[12]

---

[5] Scrivener, 181 Wn.2d at 444.

[6] Garrison v. Sagepoint Fin., Inc., 185 Wn. App. 461, 484, 345 P.3d 792, review denied, 183 Wn.2d 1009 (2015).

[7] Scrivener, 181 Wn.2d at 444.

[8] Hearst Commc'ns, Inc. v. Seattle Times Co., 154 Wn.2d 493, 503, 115 P.3d 262 (2005).

[9] Id. (citation omitted).

[10] Id. at 504.

[11] Id.

[12] Id.

In Berg v. Hudesman,[13] the supreme court "recognized the difficulties associated with interpreting contracts solely on the basis of the 'plain meaning' of the words in the document."[14] Interpreting a contract "involves 'one person giving a meaning to the symbols of expression used by another person.'"[15] But "the meaning of a writing 'can almost never be plain except in a context.'"[16] The supreme court adopted the "context rule" and recognized that the parties' intent "cannot be interpreted without examining the context surrounding an instrument's execution."[17] Relevant extrinsic evidence to ascertain the parties' intent "may include (1) the subject matter and objective of the contract, (2) all the circumstances surrounding the making of the contract, (3) the subsequent acts and conduct of the parties, and (4) the reasonableness of respective interpretations urged by the parties."[18]

Since Berg, the supreme court has "explained that surrounding circumstances and other extrinsic evidence are to be used 'to determine the meaning of specific words and terms used' and not to 'show an intention

---

[13] 115 Wn.2d 657, 801 P.2d 222 (1990).

[14] Hearst Commc'ns, Inc. 154 Wn.2d at 502.

[15] Id. (alternation in the original) (internal quotation marks omitted) (quoting Berg, 115 Wn.2d at 663).

[16] Id. (internal quotation marks omitted) (quoting Berg, 115 Wn.2d at 668).

[17] Id.

[18] Id.

independent of the instrument' or to 'vary, contradict or modify the written word.'"[19]

But not all extrinsic evidence is admissible. For instance, "evidence of a party's unilateral or subjective intent as to the meaning of a contract word or term is inadmissible."[20] And a party cannot use extrinsic evidence to "'vary, contradict or modify the written word.'"[21]

Here, the preliminary question is whether there are any genuine issues of material fact for trial. Hvidtfeldt and Sitrion primarily dispute the meaning of the language in the employment agreement. They do so, in part, by reference to extrinsic evidence.

The January 1, 2012 employment agreement includes the following material terms and conditions:

. . . .

2. COMPENSATION
Base Salary: For services provided, Employer will pay Employee an annual base salary of US$100,000 paid in accordance with Employer's annual payroll procedures. The Base Salary will increase to US$ 120,000 in fiscal year 2013.
*Success Bonus: In addition to the base salary the Employee will be receiving an annual variable compensation in the amount of US$180,000 (at 100% target achievement) per year to be paid upon achieving targets defined by the Board of the Employer. See Appendix 1 for the 2012 Bonus agreement.*

---

[19] Id. at 503 (emphasis omitted) (quoting Hollis v. Garwall, Inc., 137 Wn.2d 683, 695-96, 974 P.2d 836 (1999)).

[20] Miller v. Kenny, 180 Wn. App. 772, 792, 325 P.3d 278 (2014) (emphasis omitted).

[21] Id. at 793 (quoting Hollis, 137 Wn.2d at 695).

**The Success Bonus increases to US$ 230,000 (at 100% target achievement) in fiscal year 2013.**[22]

Moreover, the same agreement also states:

. . . .

14. CONTINUING OBLIGATIONS
Notwithstanding the termination of Employee for any reason, the provisions of paragraph 5, 6, 7, 9, and 13 of this Agreement will continue in full force and effect following such termination.[23]

. . . .

19. ENTIRE AGREEMENT
This Agreement constitutes the entire agreement between the Parties and supersedes any prior understanding or representation of any kind preceding the date of this Agreement. There are no other promises, conditions, understandings or other agreements, whether oral or written, relating to the subject matter of this Agreement. This Agreement may be modified in writing and must be signed by both Employee and Employer.[24]

Hvidtfeldt does not argue that there are any other "promises, conditions, understandings or other agreements, whether oral or written" that alter the terms of this written agreement under paragraph 19.[25] Rather, he rests his challenge on the written agreement itself and extrinsic evidence concerning its context. Because the parties do not dispute the language in the employment agreement or the relevant extrinsic evidence, there are no genuine issues of material fact for trial.

---

[22] Clerk's Papers at 30 (emphasis added).

[23] Id. at 32.

[24] Id. at 32-33.

[25] Id. at 33.

Thus, our primary focus is on determining whether Sitrion is entitled to judgment as a matter of law. To do so, we focus on the objective manifestation of the parties, as expressed in their written employment agreement. Doing so here, we conclude that the only reasonable interpretation of the compensation paragraph is that no success bonuses are payable to Hvidtfeldt after the termination of his employment.

Paragraph 14 of the agreement specifies what portions of the agreement survive "the termination of [Hvidtfeldt] for any reason."[26] A straightforward reading of the plain words of this paragraph make clear that only certain numbered paragraphs of the agreement continue in full force and effect following his termination. Notably, paragraph 2—the compensation paragraph—is not among them. Thus, the entire compensation paragraph, which includes both base salary and success bonuses, does not survive the termination of his employment. That is the parties' clear objective manifestation as to the subject of compensation.

To the extent there is any need to consider extrinsic evidence, that evidence is consistent with this reading of the agreement. The e-mail communication between Hvidtfeldt and Sitrion GmbH's president during the negotiations that preceded the execution of the employment agreement by both parties confirms this reading.

---

[26] Id. at 32.

8

This communication shows that Hvidtfeldt understood that Sitrion GmbH rejected his proposal to modify the proposed agreement to include any bonuses after he was no longer employed by the company. In fact, Hvidtfeldt's declaration acknowledges that Sitrion "rejected my proposal that I receive tail compensation following . . . termination of the Employment Agreement."[27] Thus, the parties purposefully excluded a post termination bonus provision from the employment agreement.

Other extrinsic evidence further supports our reading. The parties' other agreements also demonstrate their intent to exclude post termination bonuses in the employment agreement. The cooperation and incentive agreements both explicitly provided circumstances where Hvidtfeldt would receive post termination compensation. But the employment agreement lacks such language. Further, it explicitly states that only certain paragraphs of the agreement, not including compensation, survived termination of his employment. This demonstrates that the parties intentionally excluded post termination bonuses from the employment agreement.

In sum, the agreement's language, together with extrinsic evidence, show that Hvidtfeldt is not entitled to post termination bonuses. Thus, Sitrion is entitled to judgment as a matter of law.

Hvidtfeldt argues that the language in the employment agreement unambiguously provides that he will be paid a bonus if certain conditions are met.

---

[27] Id. at 83.

We are not persuaded by any of his arguments. Further, Hvidtfeldt's second, third, and fourth arguments are not supported by any citation to authority. Accordingly, we need not consider them.[28]

First, Hvidtfeldt asserts that neither the employment agreement nor the appendix to the agreement state that his continued employment with Sitrion is a condition to receiving a bonus. In making this argument, Hvidtfeldt focuses on the words "will be receiving" and "to be paid" to argue that payment of the bonuses is mandatory if Sitrion meets its goals.[29] As previously stated, the entire compensation paragraph includes both base salary and success bonus provisions. He compares the base salary language to the success bonus language to argue that his continued employment is not a condition to receiving bonuses. He argues that while the base salary language states that his salary is "[f]or services provided," the success bonus provision does not include similar conditional language.[30]

This argument is unpersuasive because he takes words in the agreement out of context to support his argument. This argument does nothing to undercut our prior discussion that the plain words of paragraph 14 of the agreement show that his compensation does not survive the termination of his employment. And the extrinsic evidence is consistent with this reading. The essence of his

---

[28] See Darkenwald v. Emp't Sec. Dep't, 183 Wn.2d 237, 248, 350 P.3d 647 (2015); see also RAP 10.3(a)(6).

[29] Clerk's Papers at 30.

[30] Id.; Appellant's Opening Brief at 14.

argument takes words out of context to conflict with the plain words we have discussed. The controlling case authority that we discussed earlier in this opinion bars that approach.

Further, his argument is inconsistent with his actions. The compensation paragraph covers both base salary and success bonuses. Yet he only seeks in this action success bonuses, not a continuation of base salary. If the compensation paragraph survived termination of his employment, to be consistent with his theory of this case, he would be seeking both continued base pay and success bonuses. He is not.

Second, Hvidtfeldt argues that the parties "would have said so" if they intended to condition the bonuses on Hvidtfeldt's continued employment.[31] Hvidtfeldt uses the employment offer he wrote, which explicitly excludes post termination bonuses, to support his argument.

As general manager, Hvidtfeldt sent an employment offer letter to Dean Read. This letter provides that "[c]ommissions will only be paid on recognized sales up to and including effective date of termination. Bonuses will not be paid pro-rata; they must be earned in full prior to termination."[32]

But the continuing obligations paragraph makes unnecessary any separate statement conditioning bonuses on his continued employment. In any event, a subsequent employment offer to another employee that contains explicit conditional language does not change the fact that the parties' purposefully

---

[31] Appellant's Opening Brief at 13.

[32] Clerk's Papers at 58.

excluded a post termination bonus provision from Hvidtfeldt's employment agreement. In sum, the lack of explicit conditional language does not show that the employment agreement entitles Hvidtfeldt to bonuses after the termination of his employment.

Third, Hvidtfeldt argues that the continuing obligation paragraph is consistent with Sitrion's obligation to pay him post termination bonuses. He argues that this paragraph only applies to his obligations to Sitrion, not Sitrion's obligations to him. We disagree.

Although this paragraph provides only his specific continuing obligations that survive the termination of his employment, it does not negate the conclusion that the agreement otherwise ends at the termination of his employment. None of the enumerated paragraphs stated in paragraph 14 include paragraph 2—the compensation paragraph. Thus, obligations under paragraph 2 ended at his termination of employment.

Fourth, Hvidtfeldt argues that Sitrion terminated only his employment, not the employment agreement. He claims that termination of his employment "does not sever the Employment Agreement for purposes of payment of the Success Bonus."[33]

This argument is not persuasive and makes no sense. It is undisputed that Sitrion terminated Hvidtfeldt's employment in September 2012. Save for the specified paragraphs, the agreement ended at that time. For the reasons we

---

[33] Appellant's Reply Brief at 5.

stated previously in this decision, paragraph 14 does not include within its plain terms the compensation paragraph on which he relies. Thus, his compensation ended at the termination of his employment, both base salary and special bonuses. That other specified paragraphs of the agreement survived is immaterial.

Fifth, Hvidtfeldt argues that the email from Sitrion GmbH's president is not material because he did not leave Sitrion. To the contrary, we believe it is highly relevant as extrinsic evidence to assist in the interpretation of words in the agreement.

The e-mail states, "[a]s long [sic] you are with the company you will receive compensation, if you leave this ends."[34] Hvidtfeldt focuses on the words "if you leave," arguing that they refer to quitting his employment.[35] He argues that because Sitrion terminated him, he is entitled to post termination bonuses.

But Hvidtfeldt interprets this wording too narrowly. The common meaning of "leave" is "depart."[36] Neither that common meaning nor the context here requires the narrow reading he seeks to impose on this wording. In short, the fact that his employer initiated the termination is not material.

---

[34] Clerk's Papers at 41.

[35] Id.

[36] THE AMERICAN HERITAGE DICTIONARY (5th ed. 2015), https://www.ahdictionary.com/word/search.html?q=leave.

Hvidtfeldt attempts to support his argument by stating that his understanding is consistent with the parties' "course of dealings," referring to the cooperation and incentive agreements.[37] This argument is flawed.

"Course of dealings is 'a sequence of previous conduct between the parties to an agreement which . . . establish[es] a common basis of understanding for interpreting their [agreement].'"[38] "[A] course of dealing does not override express terms of a contract *or add additional obligations*, but rather, is a tool for interpreting the provisions of a contract. If an agreement and an applicable course of dealing are inconsistent with one another . . . then the express terms control."[39]

Here, even assuming the cooperation and incentive agreements are courses of dealing, a course of dealing cannot add additional obligations to the parties' agreement. Thus, post termination compensation provisions in the cooperation and incentive agreements do not add the additional obligation of post termination bonuses to the employment agreement.

Lastly, Hvidtfeldt argues that the e-mail from Sitrion GmbH's president is inadmissible extrinsic evidence because it varies, contradicts, and modifies the terms in the employment agreement. It does no such thing.

---

[37] Appellant's Opening Brief at 24.

[38] City of Tacoma v. City of Bonney Lake, 173 Wn.2d 584, 590, 269 P.3d 1017 (2012) (alteration in the original) (internal quotation marks omitted) (quoting Puget Sound Fin., LLC v. Unisearch, Inc., 146 Wn.2d 428, 436, 47 P.3d 940 (2002)).

[39] Seattle-First Nat'l Bank v. Westwood Lumber, Inc., 65 Wn. App. 811, 819, 829 P.2d 1152 (1992) (emphasis added) (citation omitted).

The e-mail does not vary, contradict, or modify the terms of the agreement. Instead, it explains why the prospective employment agreement that was to be signed by the parties does not contain a post termination bonus provision. This is consistent with the plain words of the agreement.

## WILLFUL WITHHOLDING OF WAGES

Hvidtfeldt next argues that the trial court erred by dismissing on summary judgment on his claim for willful withholding of wages. Because there was a bona fide dispute over payment of bonuses, we disagree.

RCW 49.52.050 prohibits employers from "wilfully" depriving employees of wages.[40] "[B]onuses . . . paid for work performed[] are wages."[41] RCW 49.52.070 outlines civil liability for willfully withheld wages. "The critical, but not stringent, prerequisite to liability is that the employer's . . . failure to pay wages was 'willful.'"[42]

The word "willful" means that an act "is volitional."[43] An employer withholds wages willfully if "it is the result of knowing and intentional action rather than mere carelessness."[44] "But a 'bona fide' dispute between the employer and

---

[40] RCW 49.52.050(2).

[41] LaCoursiere v. Camwest Dev., Inc., 181 Wn.2d 734, 741, 339 P.3d 963 (2014); see also RCW 49.46.010(7).

[42] Failla v. FixtureOne Corp., 181 Wn.2d 642, 655, 336 P.3d 1112 (2014), cert. denied sub nom., Schutz v. Failla, 135 S. Ct. 1904 (2015).

[43] Snoqualmie Police Ass'n v. City of Snoqualmie, 165 Wn. App. 895, 908, 273 P.3d 983 (2012).

[44] Moore v. Blue Frog Mobile, Inc., 153 Wn. App. 1, 8, 221 P.3d 913 (2009); accord Failla, 181 Wn.2d at 655.

employee regarding the wages can negate a finding of willfulness."[45] "A bona fide dispute is a 'fairly debatable' dispute over whether all or a portion of wages must be paid."[46]

The employer bears the burden of showing a bona fine dispute.[47] "'An employer's genuine belief that he is not obligated to pay certain wages precludes the withholding of wages from falling within the operation of RCW 49.52.050(2) and 49.52.070.'"[48] The issue is whether the employer's "asserted belief . . . was reasonable enough to create a bona fide dispute. It does not matter if . . . [the employer's] interpretation of the . . . clause is erroneous."[49] "Usually wilfullness is a question of fact, but . . . summary judgment is proper as a matter of law if the evidence supports a single reasonable conclusion."[50]

Here, Sitrion did not willfully withhold bonuses from Hvidtfeldt because a bona fide dispute exists regarding the payment of bonuses. As discussed earlier, Hvidtfeldt is not entitled to post termination bonuses under the employment

---

[45] Moore, 153 Wn. App. at 8; accord Wash. State Nurses Ass'n v. Sacred Heart Med. Ctr., 175 Wn.2d 822, 834, 287 P.3d 516 (2012).

[46] Wash. State Nurses Ass'n, 175 Wn.2d at 834 (internal quotation marks omitted) (quoting Schilling v. Radio Holdings, Inc., 136 Wn.2d 152, 161, 961 P.2d 371 (1998)).

[47] Id.

[48] Duncan v. Alaska USA Fed. Credit Union, Inc., 148 Wn. App. 52, 79, 199 P.3d 991 (2008) (quoting Ebling v. Gove's Cove, Inc., 34 Wn. App. 495, 500, 663 P.2d 132 (1983)).

[49] Moore, 153 Wn. App. at 8.

[50] Failla, 181 Wn.2d at 655.

agreement. Thus, it is at least "'fairly debatable'" that Sitrion did not owe Hvidtfeldt any further bonuses.[51] Accordingly, Sitrion satisfied its burden of establishing a bona fide dispute, even viewing the facts in the light most favorable to Hvidtfeldt.

In sum, Sitrion did not willfully withhold Hvidtfeldt's wages. Summary judgment was proper.

Hvidtfeldt argues that Sitrion failed to establish a bona fide dispute. But Sitrion's reasonable asserted belief that Hvidtfeldt was not entitled to post termination bonuses satisfied its burden.

We affirm the summary judgement order.

_Cox, J._

WE CONCUR:

_Trickey, J_

_Dwyer, J._

---

[51] Wash. State Nurses Ass'n, 175 Wn.2d at 834 (internal quotation marks omitted) (quoting Schilling, 136 Wn.2d at 161).